# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 15, 2008

## STATE OF TENNESSEE v. GARY EDWARD DOUGHERTY

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S51334    Robert H. Montgomery, Jr., Judge**

_____

**No. E2009-01782-CCA-RM-CD - Filed May 27, 2010**

_____

A Sullivan County jury convicted the Defendant, Gary Edward Dougherty, of two counts of attempt to commit first degree murder and two counts of aggravated assault. The trial court merged all counts and sentenced the Defendant, a Range I offender, to twenty-two years in the Tennessee Department of Correction. The Defendant appealed, contending: (1) the evidence is insufficient to sustain his convictions; and (2) the trial court erred when it enhanced his sentence. This Court held that a written order disposing of the motion for a new trial or a minute entry disposing of the motion and bearing the signature of the trial judge is required to confer upon this court jurisdiction of this appeal, and because neither was part of the record, dismissed the appeal for lack of jurisdiction. *See State v. Dougherty*, No. E2008-00131-CCA-R3-CD, 2002 WL 445070 (Knoxville, March 17, 2009). On August 31, 2009, our supreme court remanded this case to us, directing us to reconsider our opinion in light of *State v. Byington*, 284 S.W.3d 200, 223 (Tenn. 2009) (noting that "the procedure for correcting and modifying the record reflects the dual goals of avoiding technicality and expediting a just resolution of the case on its merits"). Based upon *Byington*, we conclude that we do have jurisdiction to review this case on the merits. After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, delivered the opinion of the Court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Richard A. Tate, Blountville, Tennessee, for the Appellant, Gary Edward Dougherty.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Renee W. Turner, Assistant Attorney General; H. Greeley Wells, District Attorney General; and Kent Chitwood and Kaylin Hortenstine, Assistant District Attorneys General, for the

Appellee, State of Tennessee.

## OPINION

### I. Procedural Background

The Defendant filed a timely motion for new trial, and the trial court orally denied that motion on December 13, 2007. The trial court never entered a written order relating to the motion for a new trial. However, the record contains a minute entry, which reflected that the trial court denied the Defendant's motion for new trial on December 13, 2007 and the record also contains the transcript from the hearing on the Defendant's motion. The Defendant, thereafter, filed his notice of appeal on January 10, 2008.

This Court dismissed the appeal for lack of jurisdiction because the record did not contain a written order, with the trial judge's signature, denying the motion for new trial, and the minute entry, which reflected the denial, did not bear the trial judge's signature.

On May 5, 2009, our supreme court issued an opinion in *Byington* that directly addressed the issue of whether a minute entry is sufficient to confer appellate jurisdiction. *Id.* In its opinion, our supreme court concluded that a minute entry, even if that specific page was not signed by the trial judge, constituted the entry of an order that satisfied Rule 4 of the Tennessee Rules of Appellate Procedure. *Id.* Thereafter, our supreme court remanded the Defendant's Rule 11 application to us for reconsideration in light of *Byington*.

### II. Factual Background

This case arises from the Defendant's attempt to kill his girlfriend, Teresa Sturgill ("the victim"), by stabbing her several times in the chest. A Sullivan County grand jury indicted the Defendant on two counts of attempted first degree murder and two counts of aggravated assault. At trial, the following evidence was presented: Nonnie Ramsey, the victim's daughter, testified that the Defendant and victim dated for approximately six years and lived together in the Defendant's trailer. Ramsey recalled that between 3:00 and 4:00 p.m. June 27, 2005, she received several phone calls from the Defendant while the victim was at work at Cracker Barrel. The Defendant, whom Ramsey described as "real frantic," told Ramsey that the victim was not at work and that he suspected the victim was with another man. The Defendant told Ramsey, "She's out whoring around and I'm going to kill that bitch." The Defendant stated he was going to kill the victim several times during the course of the various phone conversations, which concerned Ramsey. Ramsey testified that she attempted to contact the victim at work but could not reach her. Ramsey learned of the victim's stabbing at approximately 5:00 a.m. the next morning.

Ramsey testified that the Defendant had called Ramsey multiple times since the victim's stabbing to tell Ramsey that he loved her like a daughter and requested she not "say anything bad about him in court."

On cross-examination, Ramsey recalled she not only tried to reach the victim at Cracker Barrel but at home after the victim would have left Cracker Barrel, but the phone was busy. Ramsey acknowledged that she did not go to Cracker Barrel or the victim's home that evening to warn the victim.

Vanessa Smith testified that she lived next door to the Defendant on June 28, 2005, when, early in the morning, she woke up to the sound of the victim screaming and loud noises next door. Smith looked out her window to the Defendant's trailer, approximately thirty-five to forty feet away, and watched as the victim tried to leave the trailer, and the Defendant pulled her back in by her hair. The victim was begging for someone to call the police and saying that the Defendant "was going to kill her." The Defendant told the victim to "shut up," that "nobody was going to help her," and "to be quiet or he would kill her."

Smith testified that she called the police when she saw the victim struggling to get out of the house and then continued to watch the Defendant's trailer. She recalled that the victim tried multiple times to get out of the trailer but would only make it a few steps out of the door before being pulled back in by the Defendant. At one point the victim made it to the car parked in the driveway, but the Defendant hit the victim in the head and then dragged the victim back up the driveway by her hair. Smith stated that the victim screamed for somebody to help her, and the Defendant kept telling the victim the same thing, "I'll kill you if you don't be quiet, nobody's going to help you, nobody cares."

Deputy Melissa Marlowe, with the Sullivan County Sheriff's Office, testified she responded to a call at the Defendant's residence early on the morning of June 28, 2005. When she arrived, she heard screaming so she knocked on the door and identified herself. Deputy Marlowe recalled that, after she identified herself, the trailer went silent. While outside the trailer, she noticed a car in the driveway with the door open and hair on the front door knob of the trailer. Officer Bowling arrived and the police again knocked on the door and identified themselves. This time, they heard the victim screaming, "He's killing me, he's going to kill me." The police jimmied the lock and heard the victim again scream, "He's just stabbed me in the heart. I'm going to die, he's killing me." The two officers then proceeded into the residence and down a hallway that lead to the bathroom. Deputy Marlowe recalled that she saw the victim's legs sticking out from the bathroom into the hallway. Officer Bowling sprayed the Defendant with pepper spray and pulled the victim out of the bathroom by her legs. Deputy Marlowe took a bloody knife and secured it and moved the victim to the living room. Deputy Marlowe noticed blood squirting from the victim's chest, so she

grabbed a pillow and held it to the victim's chest wound. The victim was still screaming, "He's killed me, he's stabbed me, I'm going to die." Deputy Marlowe remained with the victim until Emergency Medical Services ("EMS") arrived.

Officer Dan Gilliam with the Sullivan County Sheriff's Office testified that on June 28, 2008, he responded to a call at the Defendant's trailer. When he arrived, Officer Bowling was in the bathroom with the Defendant, and Officer Marlowe was with the victim. Officer Gilliam assisted Officer Bowling in handcuffing the Defendant and removing him from the trailer. The Defendant had a belt wrapped around his neck, which Officer Gilliam cut off before he placed the Defendant in the patrol car. He described the Defendant as cursing and angry.

After placing the Defendant in the patrol car, Officer Gilliam returned to assist with the victim, and the victim said that the Defendant stabbed her. Officer Gilliam testified that the only two people in the trailer were the Defendant and the victim.

Teresa Sturgill, the victim in this case, testified that she was living with the Defendant in June 2005 and worked at a Cracker Barrel. On June 27, she left work between 3:00 p.m. and 4:00 p.m., went home, and went to bed because she was not feeling well. The victim recalled waking up late that night and fighting with the Defendant. At some point, she attempted to leave the residence, but the Defendant pulled the victim back inside the trailer by her hair. The victim testified that she screamed for help. The victim said that she escaped from the Defendant again and made it to the front porch where she held onto the banisters but the Defendant kicked her and eventually dragged her back inside the trailer.

The victim recalled that, throughout the incident, she continued to scream for help. The victim made it to the window and stuck her head out to scream for help, but the Defendant shoved the window down on her head. The victim testified that she felt she was in danger. The victim did not recall much after the Defendant shoved the window down on her head. She did, however, recall being in the bathroom, but she was unsure how she got into the bathroom. The victim said that the next thing she remembered was waking up in the hospital two or three days later with the stab wounds and stitches in her arm.

On cross-examination, the victim agreed that it was not usual for her to work a day shift at Cracker Barrel because she normally worked nights. She testified that the Defendant was the owner of both the trailer and the car parked in the driveway on June 28, 2005. The victim testified that for several days prior to this incident the Defendant was "very agitated" and "in a rage all the time." She stated that she had never seen him "that bad" before and that she avoided him. The victim said that she is normally prescribed Xanax, but she could not recall whether she took Xanax the night of June 27. The victim testified that she was not

sure how long she was hospitalized, but she estimated that she was hospitalized for three days and that she could not return to work for a month. At the time of trial, she lived in the Defendant's trailer with her daughter.

George Testerman, a surgeon in Kingsport, Tennessee, testified as an expert witness in the field of trauma medicine. Testerman testified that he treated the victim when she arrived in a helicopter at the hospital. Testerman recalled that the victim had multiple, potentially fatal, deep stab wounds around her sternum and heart, and abrasions and bruising to her chest. Some of the chest wounds penetrated the victim's lungs. Testerman explained that penetrating injuries in the area of the chest cavity where the victim's injuries were, are "highly lethal" and "life threatening." He recalled that the victim also had a stab wound on her arm and abrasions on her arms, shoulders, and neck.

Detective Ty Boomershine, an investigator with the Sullivan County Sheriff's Office, testified that he responded to a report of a stabbing at the Defendant's home on June 28, 2005. Detective Boomershine photographed the scene and, at approximately 10:00 a.m., returned to the sheriff's office where he was with the Defendant for over two hours. The Detective stated that the Defendant did not appear to be impaired or agitated but only concerned for the victim during that time. The Defendant requested to call his father and made multiple calls attempting to reach him. The Defendant spoke with multiple people, and his dialogue was coherent. Detective Boomershine testified that he also met with the victim to obtain samples for DNA analysis.

Jennifer Millsaps, a Special Agent Forensic Scientist with the Tennessee Bureau of Investigation, testified as an expert witness in the field of DNA Analysis. Millsaps testified that she compared the victim's DNA to DNA recovered from the knife and concluded that the victim's blood was on the knife.

Jerry Puckett testified that he was married to the victim's daughter, Nonnie Ramsey, in June 2005 but that they had since divorced. Puckett said that he was with Ramsey on the afternoon of June 27, 2005, and that Ramsey did not receive any phone calls from the Defendant or place any phone calls to the victim. Puckett testified that Ramsey never told him that the victim was in any danger.

On cross-examination, Puckett testified that the Defendant was his friend and that they used to live in the same area. Puckett said that he still maintained contact with the Defendant on a weekly basis. Puckett was aware that Ramsey and the victim met with police and said that they both changed their stories over the course of time. Puckett admitted he knew Ramsey told the police about the June 27 phone calls, but he never told police otherwise. He explained that this was because "[t]he police in this case never really had wanted to talk to

me about anything."

The Defendant testified that he owned the trailer in which he and the victim lived in June 2005. The Defendant denied that he called Ramsey on June 27, but he stated that he did not recall what happened prior to midnight on that day. He testified that when he arrived home, the victim was there. Although he did not recall talking to the victim, he did remember arguing with the victim. The Defendant did not deny that he stabbed the victim, but he maintained that he did not have any intent to kill her.

On cross-examination, the Defendant clarified that he did not remember calling Ramsey. The Defendant also stated that he did not recall stabbing the victim numerous times on June 28, 2005. He also denied using the knife recovered from the trailer to stab the victim, explaining that "if that knife went in [the victim] numerous times she'd be dead." The Defendant testified that he did not remember ever pulling the victim back inside the trailer. Even though the Defendant stated on direct examination that he did not recall anything that happened prior to midnight on June 27, the Defendant acknowledged that in prior testimony he testified about particular people's homes he had been to on June 27, 2005, and he agreed that he remembered going to those homes. He then acknowledged that he recalled making one phone call to Ramsey on that afternoon, but he denied making any threats regarding the victim during the phone call.

The jury convicted the Defendant of two counts of attempted first degree murder and two counts of aggravated assault. At a subsequent sentencing hearing the trial court merged all of the counts into the first count of attempted first degree murder and sentenced the Defendant as a Range I, standard offender to twenty-two years in the Tennessee Department of Correction.

## II. Analysis

On appeal, the Defendant contends: (1) the evidence is insufficient to sustain his convictions; and (2) the trial court erred when it enhanced his sentence. The Defendant contends that the evidence was insufficient to support his conviction for attempted first degree murder because the State failed to show that his conduct was premeditated and intentional. Next, he asserts that the trial court erred in its application of enhancement factors. The State responds that the evidence was sufficient for the Defendant's attempted first degree murder conviction and that the trial court properly considered enhancement and mitigating factors in sentencing the Defendant. We agree with the State.

### A. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty

verdict.  *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In this case, the Defendant was convicted of attempted first degree premeditated murder, a class A felony.  A conviction for attempted first degree murder requires proof that the Defendant intended to kill the victim "after the exercise of reflection and judgment" and either intentionally engaged in the conduct constituting the offense, believed the conduct would cause the intended result without further conduct, or the conduct constitutes a substantial step toward the commission of the offense.  T.C.A. § 39-13-202(d) (2006); *See* T.C.A. § 39-12-202 (a)(1) (2006); T.C.A. § 39-12-101 (2006).

The evidence, considered in the light most favorable to the State, proves that on the afternoon of June 27, 2005, the Defendant placed multiple phone calls to Ramsey during which he threatened the victim's life.  Early on the morning of June 28, an altercation ensued between the Defendant and the victim, and, during the course of this altercation, the victim repeatedly attempted to flee the residence, and the Defendant pulled or dragged the victim by her hair back into the trailer.  Throughout the altercation the victim screamed for help, saying the Defendant was going to kill her.  The Defendant told the victim he would kill her if she did not stop screaming.  At one point, the victim attempted to scream for help from a window of the trailer, and the Defendant closed the window on the victim's head so forcefully that she did not have a clear recollection of the events that occurred thereafter.  When police arrived at the residence, the victim screamed from inside the trailer that the Defendant had stabbed her and was going to kill her.  In the bathroom, police found the Defendant holding a knife and the victim lying on the bathroom floor with multiple stab wounds and other injuries.  The victim sustained life-threatening injuries, included stab wounds to her chest, near her heart, and a punctured lung.

In attacking the sufficiency of the evidence, the Defendant relies upon the first degree murder statute, which states,"The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation."  T.C.A. § 39-13-202(d).  He argues that the victim's testimony that he was agitated the days leading up to the stabbing and the fact that he could not recall what occurred on June 28, 2005, show that he was not free from excitement and passion as required for premeditation.  *Id.*  The question of whether a defendant has acted with premeditation is a jury question. *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Holder*, 15 S.W.3d 905, 914 (Tenn. Crim. App. 1999).  Upon review of the record, we conclude that a rational juror could have found premeditation in this case based upon the following facts: the victim was unarmed; that the Defendant made prior threats to kill the victim; the Defendant repeatedly stabbed the victim in the chest area near her heart; and,

despite the victim's repeated cries that the Defendant was killing her, he continued in his course of conduct.

Accordingly, we conclude that the evidence is sufficient for the jury to find the Defendant guilty of attempted first degree murder beyond a reasonable doubt. As such, the Defendant is not entitled to relief on this issue.

## B. Sentencing

The trial court sentenced the Defendant as a Range I, standard offender. The trial court considered statutory enhancement factors, finding that four applied, and sentenced the Defendant to twenty-two years. The Defendant appeals this decision, arguing that the trial court incorrectly applied the enhancement factors.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts (2006). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the Sentencing Act, Tennessee Code Annotated section 40-35-103 (2006), the appellate court may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 4-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any

statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). We must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2006).

Specific to the review of the trial court's finding enhancement and mitigating factors, "the 2005 amendments deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). The Tennessee Supreme Court continued, "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346. The trial court shall also consider, but is not bound by, the guideline that the minimum sentence within the range should be imposed, but the sentence length, within the range, should be adjusted based on the presence or absence of mitigating and enhancement factors. T.C.A. § 40-35-210(c)(1) and (2) (2006).

The Defendant is a Range I, standard offender, convicted of a class A felony. As such, his applicable sentencing range was fifteen to twenty-five years. The mitigating and enhancement factors considered by the trial court are found in Tennessee Code Annotated section 40-35-113 and -114, and, in this case, the trial court found one mitigating factor applied and that the following enhancement factors also applied:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

. . .

(6) The personal injuries inflicted upon; or the amount of damage to property sustained by or taken from, the victim was particularly great;

. . .

(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community;

(9) The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense.

T.C.A. § 40-35-114 (1), (6), (8), and (9) (2006). The Defendant challenges the trial court's application of enhancement factors (1), (6) and (9).

In applying enhancement factor (1) to enhance the Defendant's sentence, the trial court explained that all of the Defendant's prior convictions were for misdemeanors, but seven of those convictions involved violence. Finding that the personal injuries inflicted upon the victim were particularly great and that serious bodily injury is not an element of attempted first degree murder, the trial court applied enhancement factor (6) to the Defendant's conviction. Finally, in finding that the Defendant used a deadly weapon in his attempt to kill the victim and that the use of a deadly weapon is not a required element of attempted first degree murder, the trial court applied enhancement factor (9) to the Defendant's conviction.

The Defendant contends that the trial court improperly considered his prior convictions in applying enhancement factor (1) because all of his prior convictions were misdemeanors. Misdemeanor convictions alone, however, may support application of this enhancement factor. *State v. Porter*, No. W2004-02012-CCA-R3-CD, 2005 WL2860255, at *3 (Tenn. Crim. App., at Jackson, Oct. 31, 2005). Moreover, even assuming that the Defendant's assertion that misdemeanor convictions alone should not be used to enhance a sentence, these convictions would still be considered criminal behavior and thus applicable under the statute. The trial court's application of this enhancement factor is amply supported by the record.

The Defendant next asserts that the trial court improperly applied both enhancement factor (6), that the personal injuries inflicted on the victim were particularly great, and enhancement factor (9), that the Defendant possessed a deadly weapon during the offense, because each factor is an essential elements of his convicted offense. Significant or "particularly great" injury, however, is not an element of attempted first degree murder. T.C.A. § 39-13-202(d); *See* T.C.A. § 39-12-202 (a)(1); T.C.A. § 39-12-101. The record evinces that the victim was stabbed multiple times to her chest, and one stab wound punctured her lung. She lost consciousness during the ongoing attack and recalled waking in the hospital several days after the attack. The record supports the trial court's finding that the victim suffered particularly great injury. Therefore, the trial court properly applied enhancement factor (6) to the Defendant's conviction.

Likewise, as to enhancement factor (9), use of a deadly weapon is not an element of

attempted first degree murder. *See* T.C.A. § 39-13-202. Further, the record does not preponderate against the trial court's finding that the Defendant used a knife in the commission of his crime. As such, we conclude that the trial court properly applied enhancement factor (9) to enhance the Defendant's sentence. *See State v. Baxter*, 938 S.W.2d 697, 705 (Tenn. Crim. App. 1996); *State v. Alexander*, 957 S.W.2d 1, 7 (Tenn. Crim. App. 1997)

After reviewing the enhancement factors, the trial court considered each statutory mitigating factor and found that mitigating factor (13), "any other factor consistent with the purposes of this chapter," applied based upon the Defendant's excellent work history, efforts to rehabilitate, and honorable discharge from military service. T.C.A. § 40-35-113(13) (2006). In considering the enhancement and mitigating factors, the trial court ultimately concluded that an enhanced sentence of twenty-two years "is appropriate to restrain [the Defendant] because he has, what I would consider to be a clear disregard for the laws and morals of society and because failures of past efforts of rehabilitation have not worked in this particular case."

Accordingly, because the record supports the trial court's sentencing determinations, we affirm the sentence imposed by the trial court. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude that sufficient evidence was presented for a jury to find the Defendant guilty of attempted first degree murder and that the trial court correctly sentenced the Defendant. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE